JOURNAL ENTRY AND OPINION
Felix Wyley filed this appeal from a judgment of the trial court denying his motion to vacate his guilty plea to an amended charge of attempted corruption of a minor. On appeal, Wyley contends his defense attorney promised that he would receive probation if he entered the guilty plea. Wyley also challenges the trial court's denial of his Crim.R. 32.1 motion without first conducting an evidentiary hearing. Upon review of the record and applicable law, we have concluded that the trial court properly exercised its discretion in denying the motion to vacate and, therefore, we affirm the judgment of the trial court.
The record before us reveals that on November 22, 1999, the grand jury indicted Felix Wyley for corruption of a minor, a felony of the fourth degree. On May 16, 2000, Wyley pled guilty to an amended charge of attempted corruption of a minor, a felony of the fifth degree. At that time, the transcript of the plea hearing reflects the following colloquy between the court and Wyley:
 THE COURT: Have any threats or promises been made to you other than what was said on the record in open court?
THE DEFENDANT: No.
 THE COURT: Do you understand there is no promises of a particular sentence? [sic]
THE DEFENDANT: Yes (Tr. 12.)
Following the plea, the court referred the matter to the probation department for preparation of a presentence investigation report. At the sentencing hearing on June 12, 2000, the court reviewed the presentence report, and commented that at 27-years-old you have 19 convictions, five as a juvenile and 14 as an adult * * * including a prior prison term. (Tr. 5.) The court then sentenced Wyley to a prison term of ten months. After the court pronounced its sentence, it classified Wyley as a sexually oriented offender and explained the registration procedure to him. Thereafter, Wyley's counsel made an oral motion to vacate the guilty plea, which the court denied. Subsequently, on June 15, 2000, the trial court journalized its sentence.
Three weeks later, on July 6, 2000, Wyley filed a written motion to vacate his guilty plea. Wyley instituted this appeal on July 14, 2000, before the trial court ruled on this Crim.R. 32.1 motion. We must treat the pending motion to vacate as if it were denied for the purposes of this appeal. See, e.g., State v. Jackson (Sept. 26, 1996), Cuyahoga App. No. 69433, unreported. Wyley raises the following assignment for our review:
 THE TRIAL [COURT] ERRED AND ABUSED ITS DISCRETION WHEN IT SUMMARILY DENIED APPELLANT'S MOTION TO VACATE PLEA OF GUILTY.
In his sole assignment of error, Wyley claims the trial court abused its discretion when it denied his motion to vacate his guilty plea without first conducting a hearing. Wyley urges that his attorney promised him that he would receive probation if he entered a guilty plea. The state counters that Wyley's postsentence motion and supporting affidavits failed to establish a manifest injustice and were insufficient to mandate an evidentiary hearing.
Crim.R. 32.1 governs the withdrawal of a guilty plea, and provides:
 A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea. (Emphasis added.)
In the first and second paragraphs of its syllabus in State v. Smith (1977), 49 Ohio St.2d 261, the court stated:
 1. A defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice. (Crim.R. 32.1).
 2. A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court.
Postsentence motions to withdraw guilty pleas are not freely granted because that would allow defendants to withdraw their pleas when unfavorable sentences are received. State v. Mushrush (1999),135 Ohio App.3d 99, 107, citing State v. Peterseim (1980),68 Ohio App.2d 211. In Peterseim, Judge John V. Corrigan of this court cited with approval Kadwell v. United States (C.A.9, 1963), 315 F.2d 667, where the court distinguished between a pre- and post-sentence motion to withdraw a guilty plea, stating:
 * * * But if a plea of guilty could be retracted with ease after sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. * * *
Id. at 670 (emphasis added).
Obviously, case law allowing the carte blanche withdrawal of guilty pleas after the court pronounced sentence would substantially affect the plea bargaining process and erode the court's ability to exercise its discretion in imposing sentence. See, also, State v. Caraballo (1985),17 Ohio St.3d 66, 67 (The logic behind this precept is to discourage a defendant from pleading guilty to test the weight of potential reprisal, and later withdraw the plea if the sentence was unexpectedly severe.)
Here, after the court pronounced its ten-month prison sentence, Wyley's counsel moved to withdraw the guilty plea. The following colloquy occurred at that point, as transcribed in the record:
 MR. WATSON: Yes, your Honor. I would like to make a motion to vacate the plea on the basis that I had so informed my client that with the expectation of the recommendations and what was put on the record by the investigator who headed this investigation in this case that there was some dificulties [sic] and problems with them making this case; and that counsel did have a discussion with the Court; and that counsel's impressions were that he would be a very good candidate to get a community control sanction, and not only that, that I so advised him and that had induced him in this plea of guilty. And since that was not the intention of the Court, I think that I unduly influenced my client to enter a plea of guilty when we both knew that there was some difficulty for the prosecutors to make their case in this particular case because the victim in this case did not provide the DNA analysis and was very uncooperative and very unlikely to show up in court.
 THE COURT: Mr. Watson, I find it very curious that you are attempting to say on the record that you had an agreement from the prosecution to recommend to this Court probation.
It was not the case.
 You know as well as I do, I have a recommended sentence form which was not completed in this case.
 In fact, my notes reflect that the only thing that Mr. Kendall told me was that the victim was uncooperative. There was no discussion about sentence.
 In fact, the plea is quite clear that this defendant admitted he had no promise of a particular sentence, and neither did I ever tell you he was a good candidate for community control. I didn't tell you anything about sentencing. I didn't know anything about his record.
MR. WATSON: Right.
 THE COURT: When a record comes back with 19 convictions — and I am not counting the ones that were dismissed — five as a juvenile, 14 as an adult, two prior prison terms, excuse me, Mr. Watson, but you must be imagining things if you think you had ever discussed or disclosed that to me and I had ever indicated to you community control given those facts.
 You asked for the PSI. That was your risk when you asked for it.
 There was [sic] no promises from this Court. (Emphasis added.)
* * *
 THE COURT: There's a big difference between disclosing to this Court, Mr. Watson, that the victim doesn't want to testify and you trying to represent on the record that I promised you a sentence, when you know that wasn't the case.
MR. WATSON: I didn't say that, your Honor.
 What I did say was that I had an indication that the Court would take — factor all that into consideration.
 THE COURT: I did factor it into consideration, Mr. Watson.
 MR. WATSON: With that being said, that the prosecutor had — with this discussion with me that the prosecutor's office was going to recommend probation, and that was our understanding, and that's — and the prosecutor initiated the conversation with me because of the lack of proof to prove his case in this particular matter.
 THE COURT: Well, maybe, Mr. Watson, you needed it made very clear to you that prosecutors don't sentence in my courtroom. I do.
We are finished. Thank you.
MR. WATSON: Thank you.
 Your Honor, did you deny my motion to vacate the plea?
THE COURT: Denied.
* * * (Tr. 11-14.)
Following this exchange in the courtroom, Wyley's counsel filed a written motion to vacate the guilty plea on July 6, 2000. In this motion, which was supported by affidavits from Wyley and his counsel, Wyley urged that he entered a guilty plea because his counsel promised him he would receive probation. His counsel reiterated this contention, and once again urged that the trial court indicated Wyley would receive probation.
The record before us does not support defense counsel's claims that the court promised Wyley would receive community control sanctions. At the time he entered his plea, Wyley recognized that no such promises had been made to him. (Tr. 5.) Rather, the court indicated to him that he could receive a prison sentence of six to twelve months, and Wyley acknowledged his understanding of this possible sentence. (Tr. 9.)
A careful examination of the record demonstrates that neither the prosecution nor the court made any representations as to Wyley's sentence. On appeal, Wyley urges that his counsel promised him probation, and that he would not have entered a guilty plea otherwise. If correct, these assertions raise questions of ineffective assistance of counsel as opposed to grounds for withdrawal of a plea under Crim.R. 32.1. According to the overwhelming weight of authority, counsel's incorrect predictions as to what a defendant's sentence would be does not, in and of itself, constitute manifest injustice. State v. Blatnik (1984), 17 Ohio App.3d 201, 204.
On appeal, Wyley also urges that the court was required to conduct a hearing on his Crim.R. 32.1 motion. A hearing on a postsentence motion to withdraw a guilty plea is not required if the facts alleged by the defendant and accepted as true by the trial court would not require the court to allow the withdrawal of the plea. State v. Wynn (1998),131 Ohio App.3d 725, 728, citing State v. Blatnik (1984),17 Ohio App.3d 201, 204; State v. Hamed (1989), 63 Ohio App.3d 5, 7; State v. Milton (June 1, 1995), Cuyahoga App. No. 65828, unreported. As noted above, the allegations that Wyley's counsel promised him probation, even if we accept them as true in the face of the other discredited allegations, would not require the court to allow the withdrawal of Wyley's guilty plea and, therefore, these allegations are insufficient to mandate a hearing in this case. Based upon the foregoing, the trial court properly exercised its discretion when it denied Wyley's Crim.R. 32.1 motion without a hearing.
Accordingly, we overrule the sole assignment of error and affirm the judgment of the trial court.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _________________________ TERRENCE O'DONNELL, JUDGE
JAMES D. SWEENEY, P.J. and ANNE L. KILBANE, J. CONCUR.